J-S43043-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| GUILLERMO ALMANZA-GONZALEZ, JR. | |
| Appellant | No. 1885 MDA 2015 |

Appeal from the Judgment of Sentence October 1, 2015
In the Court of Common Pleas of Berks County
Criminal Division at No(s): CP-06-CR-0005473-2014

BEFORE:  GANTMAN, P.J., PANELLA, J., and JENKINS, J.

MEMORANDUM BY JENKINS, J.:                 **FILED MAY 19, 2016**

Guillermo Almanza-Gonzalez, Jr. ("Appellant") appeals from his judgment of sentence for aggravated assault, recklessly endangering another person ("REAP") and conspiracy to commit aggravated assault.[1]  We affirm.

On September 16, 2014, a jury found Appellant guilty of the aforementioned charges.  On October 1, 2015, the trial court sentenced Appellant to 8½ - 25 years' imprisonment.  Appellant filed a timely appeal, and both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises three issues in this appeal, but we can easily condense them into one: whether the evidence is sufficient to support

_____

[1] 18 Pa.C.S. §§ 2702(a)(1), 2705, and 903, respectively.

Appellant's convictions for aggravated assault, REAP and conspiracy. Our standard of review for such challenges is well-settled:

> [W]hether[,] viewing all the evidence admitted at trial in the light most favorable to the [Commonwealth as the] verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding an appellant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence.

*Commonwealth v. Gonzalez*, 121 A.3d 711, 716 (Pa.Super.2015).

Viewed in the light most favorable to the Commonwealth, the evidence is as follows:

> In the early morning hours of August 16, 2014, Israel Maisonet (nicknamed 'Izzy') was with his girlfriend, Jada Johnson, Brian Ruiz, and Neida Respaldo (nicknamed 'Beba'). At some point, [Appellant] called Beba's phone, which was put on speaker. [Appellant] challenged Maisonet to a 'fair fight,' meaning that it would be a one-on-one fight with no kicking or weapons. Maisonet understood to go to the 300 block of South 6th Street in the City of Reading. Johnson did not want Maisonet to engage in any conflict, but he insisted on going immediately.
>
> Maisonet and Johnson arrived at the designated block around 2:20 or 2:30 a.m. [Appellant] and six other males were at the scene. These individuals were Luis Segura (nicknamed 'Pacman'), Luis's younger brother Iziah Segura ('Little Pac'), Jesus Quintero ('B.T.' or 'Batata'), Hector Samot ('Negro'), Jefferson Capellan-Ofarril ('Jefro'), and Jesus Andrew Lopez-Perez. [Appellant]'s nickname was 'Pelon'. Johnson had known all of the males for several years. Kelsey Kohl, Beba, and Beba's mother, Julia Morales, were also present at the scene. A sibling

of Beba's may have also been present. Johnson sat on the steps to Beba's porch, which was in the immediate area. Maisonet took off his shirt, sweater, and hat and handed the items to Johnson. Capellan-Ofarril, who had been shirtless the entire time, was now the individual who would be fighting Maisonet. Beba's mother patted down Maisonet and Capellan-Ofarril for weapons.

The two began fighting in the middle of the street. Maisonet landed a big punch and attempted to kick Capellan-Ofarril, but the other males at the scene broke them up. Quintero exchanged some words with Maisonet. [Appellant] pulled out a knife from his front pocket and said 'one more dirty shit and he is getting it.' Jesus Lopez-Perez testified instead that [Appellant] had retrieved the knife from an empty lot on South 6th Street.

The fight resumed, and Maisonet again punched Capellan-Ofarril and attempted to kick him. At this time, most of the males begin attacking Maisonet. During the fight, Kelsey Kohl had been standing and holding [Appellant]'s arm. She tried to stop [Appellant] from joining the fight, but he slipped away and began hitting Maisonet. Maisonet was rushed from the middle of the street up onto a porch across the street, as the group continued to punch and kick him. [Appellant] ran to the porch, reached through the railing, and stabbed Maisonet in the neck.

The group fled. Luis Segura rode by on a bicycle and told Johnson, 'This is why I told you to stay the fuck off my block.' Maisonet was able to get up and run to the street, where he collapsed.

At around 2:30 or 2:45 that morning, Sergeant Scott Shultz, a Patrol Supervisor with the Reading Police Department, was in his police vehicle with Officer Santiago Hernandez. Shultz noticed three or four people walking southbound away from the 300 block of South 6th Street, which got his attention. The individuals were not running, but they were walking quickly and with a purpose - as if 'they wanted to get out of that area quickly.' Prompted by this, Sergeant Shultz drove into the 300 block of South 6th Street. Mid-block he saw two females standing on the sidewalk yelling and waving their arms, trying to get the officers' attention. Shultz saw Maisonet's lifeless body lying on the street between two parked cars. He was later

- 3 -

pronounced dead at the scene by Emergency Medical Technicians with the Reading Fire Department.

The next day, Iziah Segura saw [Appellant] and Capellan- Ofarril walking from the Schuylkill River. [Appellant]'s pants were wet, so they went to [Appellant]'s house to change and to do laundry. Police arrived to arrest them shortly thereafter. Later, while in custody, [Appellant] told Iziah Segura, 'I did it.' [Appellant] also stated that he had 'wrapped the knife around like clothes, pissed on it, and put it in his back yard. And then in the morning, him and Jefferson went down and they threw it in the Schuylkill River.'

Pa.R.A.P. 1925 Opinion, at 2-3.

The Crimes Code provides in relevant part that a person is guilty of aggravated assault if he "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." 18 Pa.C.S. § 2702(a)(1). The Crimes Code defines REAP as follows: "A person commits a misdemeanor of the second degree if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury." 18 Pa.C.S. § 2705.

The trial court reasoned:

It is beyond dispute that the victim suffered serious bodily injury. The only issue is whether the jury had sufficient evidence to conclude beyond a reasonable doubt that Appellant participated in the attack, and that his conduct was intentional, knowing, or reckless. The Commonwealth introduced evidence that the victim, Israel Maisonet, was attacked by multiple individuals. Maisonet was repeatedly punched and kicked by the group, and he was led to a porch where the beating continued. At this point, [Appellant] approached the porch, reached through the railing, and stabbed Maisonet in the neck. The Commonwealth also introduced evidence that [Appellant] later

confessed to his participation in the attack and disposed of the knife in the Schuylkill River. From this evidence, a reasonable jury could easily conclude that [Appellant] was guilty of aggravated assault and recklessly endangering another person.

Pa.R.A.P. 1925 Opinion, at 5. The trial court correctly concluded that the evidence was sufficient to sustain Appellant's convictions for aggravated assault and REAP, because Appellant stabbed the victim during a brawl in which Appellant and his cohorts mercilessly beat the victim to death.

To sustain a conviction for criminal conspiracy, the Commonwealth must prove beyond a reasonable doubt that the defendant (1) entered into an agreement to commit or aid in an a criminal act with another person or persons (2) with a shared criminal intent, and that (3) an overt act was done in furtherance of the conspiracy. **Commonwealth v. Johnson**, 920 A.2d 873, 878-79 (Pa.Super.2007). The defendant himself need not commit the overt act; it need only be committed by a co-conspirator. **Id**. We have explained the agreement element of conspiracy as follows:

> The essence of a criminal conspiracy is a common understanding, no matter how it came into being, that a particular criminal objective be accomplished. Therefore, a conviction for conspiracy requires proof of the existence of a shared criminal intent. An explicit or formal agreement to commit crimes can seldom, if ever, be proved and it need not be, for proof of a criminal partnership is almost invariably extracted from the circumstances that attend its activities. Thus, a conspiracy may be inferred where it is demonstrated that the relation, conduct, or circumstance of the parties, and the overt acts of the coconspirators sufficiently prove the formation of a criminal confederation. The conduct of the parties and the circumstances surrounding their conduct may create a web of evidence linking the accused to the alleged conspiracy beyond a reasonable doubt. Even if the conspirator did not act as a

principal in committing the underlying crime, he is still criminally liable for the actions of his co-conspirators in furtherance of the conspiracy.

***Johnson***, 920 A.2d at 878.

The trial court reasoned:

The Commonwealth introduced evidence that [Appellant] and the other attackers acted in concert while attacking Israel Maisonet. [Appellant] called Maisonet and challenged him to a fight. When Maisonet arrived on the scene, it became evident that he would now be fighting Jefferson Capellan-Ofarril. During the one-on-one fight, Maisonet twice attempted to kick his opponent. The group voiced its displeasure after the first kick; after the second kick, Maisonet was mercilessly attacked by much of the group, including [Appellant]. Based on this evidence, a reasonable jury could certainly conclude that the group had a shared criminal intent, and that they therefore had conspired to commit aggravated assault.

Pa.R.A.P. 1925 Opinion, at 7. We agree with the trial court that the evidence was sufficient to sustain Appellant's convictions for conspiracy to commit aggravated assault.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/19/2016

- 6 -